# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>Evidence items 1B1, 4, 6, 10-19, 21, 23-43, 45-50, 52, 53, 55, and 60-88 held in evidence and associated with FBI case 305G-DN-2238904, currently stored in the FBI Fort Collins Resident Agency pending transfer to FBI Denver Evidence Room and more fully described in Attachment A, attached hereto. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  17-sw-6596-KLM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __State and__ District of __Colorado__ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit
The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    X  evidence of a crime;

    X  contraband, fruits of crime, or other items illegally possessed;

    X  property designed for use, intended for use, or used in committing a crime;

    ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. §§ __2251, 2252 and 2252A__, and the application is based on these facts:

    X  Continued on the attached affidavit, which is incorporated by reference.

    ☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/* Philip R. Jones .
*Applicant's signature*

Philip Jones, Special Agent, FBI
*Printed name and title*

Sworn to before me and:    ☐ signed in my presence.
                           ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: **20 Dec 2017**

*Judge's signature*

City and state: __Denver, CO__

Kristen L. Mix
United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Philip Jones, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been since January 2015. As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A.  I have received training and instruction in the field of investigation of child pornography, and I have conducted investigations relating to the sexual exploitation of children.  As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).

2. This affidavit is submitted in support of an application for a search warrant for computers and related equipment (more fully described in Attachment A), and the data located therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A are located in the place described in Attachment A.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

5. This investigation concerns alleged violations of 18 U.S.C. Sections 2251, 2252 and 2252A, relating to material involving the sexual exploitation of minors.

6. 18 USC Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or

foreign commerce, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate of foreign commerce.

7. 18 U.S.C. Sections 2252(a)(2) and 2252A(a)(2) prohibit a person from knowingly receiving or distributing any child pornography or any material that contains child pornography that has been mailed, or using means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

**DEFINITIONS**

8. The following definitions apply to this Affidavit and Attachment B to this Affidavit.

9. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

10. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image  See 18 U.S.C. § 2256(5).

11. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

12. Several items are currently held in evidence at the FBI's Resident Agency office located at 2915 Rocky Mountain Avenue, Suite 210, Loveland, Colorado, which were discovered and seized from a brown and white Apache camper, no license plate and no identifiable Vehicle Identification Number, belonging to Frank Steven Wietecha, Junior, pursuant to a search warrant issued by the Eighth Judicial District Court of Colorado. These items are being held in evidence under case number 305G-DN-2238904. The items include the following items listed below, referred to hereinafter and in Attachments A and B as the "Devices:"

- Verizon Jet Pack with passwords
- Neuros HD
- Micro DVDs with the following titles:

- o [Minor #1] 4-29
- o [Minor #1] Shows up with sisters 4-20-15
- o [Minor #1] sings to me
- o [Minor #1] Tattoo 4-20-15
- o [Minor #1] & Cali Do Nails
- Motorola M Card, S/N MA1321ER2046
- Sandisk 128 GB SD Card, S/N S34611122
- 19 DVDs
- 2 wireless cards
- 2 SIM cards
- Compaq laptop computer, S/N CND83032K3
- Gateway laptop computer, S/N LXWGH02036948BATD42200
- Gateway laptop computer, S/N LXWM8020020191B1F1601
- Dell Inspiron laptop computer, S/N CN-0W92601296158J5819
- Gateway laptop computer, S/N LXWRE02001034197EB1601
- HP Pavilion ze4500 laptop computer, S/NCNF3400192
- HP Pavilion ze4400 laptop computer, S/N CNF33422SM
- HP Pavilion ze4300 laptop computer, S/N CN31556231
- Toshiba Portege 2000 laptop computer, S/N 32063078PU
- SanDisk Cruzer Glide 64GB, BN170225641B
- Alacatel OneTouch Cellular Telephone, S/N B1780002C172TROA
- Mino Flip Video Device (x3)
- Sony Bloggie, 1647237
- Misc Cell Phones (broken and missing parts, approximately four)
- PNY optima SD, 2GB, WF9303F
- Sony 64MB Memory Stick, E42423A
- iPhone A1532
- Sony 128MB Memory Stick, K1097SA
- Samsung Cellular Telephone, S/N SM-S327VL(GP), IMEI 354308081442369
- LG Cellular Telephone LGMS345, S/N 506CYDG003714
- Pantech Cellular Telephone CDM8999VW, S/N 110900269730 (no battery)
- Samsung Cellular Telephone SPH-M830 (no battery)
- Nikon CoolPix 2500, 3310400
- Yellow digital camera, unknown make and model
- Sony Palm Pilot Clie, S/N 3019048
- Notes with IMEI, Router and IP addresses
- Sony Handycam, 321620
- Found me Tag it and track it (x4)
- View Sonic Digital Card Reader, Model NS12289, Barcode R65084102922
- PNY Optima Attache 8GB
- PNY Attache 16GB
- DaneElec Flashdrive

- Pink MP3 Player, 256MB, unknown make
- Welldone company, Credit card shape flash drive, FHD01-03
- Black flash drive, unknown make
- RCA device, TH1814WM-A
- DaneElec 128MB Flashdrive
- Toshiba Disk Drive, MK3265GSXN, S/N 61ISC063T
- Toshiba Disk Drive, MK3255GSXF, S/N 90EXT3ZAT
- Samsung Disk Drive, MP0402H, S/N S03WJ20L344172
- Hitachi Disk Drive, HTS543232L9A300, S/N 090203FB0400LEK3VW9A
- Western Digital Disk Drive, WD1600BEVE-00A0HT0, S/N WX91C5228404
- Toshiba Disk Drive, HDD2146, S/N 90R13076T
- Fujitsu Disk Drive, MHW212013J, S/N K321T82276LP
- Seagate, ST9100822A, S/N 3LG1LWZL
- iPhone A1303
- iPhone 5, identifiers covered
- iPhone A1387
- Samsung Cellular telephone, IMEI 358917054572170
- Samsung Cellular Telephone, GT-19500, IMEI 357138054542599
- Cricket Nokia, cracked screen with blue back cover, IMEI 356454060848214
- LG Cellular Telephone with cracked screen, IMEI 354887071283800
- Intel Nextbook, S/N YFG0914040003
- Asus Nexus Tablet, S/N C60KBC097026
- Samsung SD adaptor with MicroSD card, unknown make and size
- Amazon Kindle, model X43Z60, with hand written note "brittanyhajek@yahoo.com
- 16 spy-type cameras
- 3 drones

13. The Eighth Judicial District Court warrant authorized seizure of the following: "Any and all digital storage devices, SD cards, SIM cards, hard drives, external hard drives, VHS tapes, beta tapes, tablets, I-pad or similar devices, PDAs, cell phones, computers, thumb drives, CDs, DVDs, digital or film cameras, film canisters, negative film strips, capable of storing or promoting obscenity or pornography, child pornography, distributing or production of child pornography, bed sheets and linen, proof of residence, photographs of the camper and its interior."

14. I believe there is probable cause to believe that the Devices seized are or contain evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

15. The Devices are currently in the lawful possession of the FBI. They came into the FBI's possession in the following way: They were seized from a brown and white Apache Camper

located on the property of 415 Gunn Avenue, Berthoud, Colorado pursuant to a search warrant issued by the Eighth Judicial District Court of Colorado. FLPD transferred these items to the FBI on November 30, 2017 at approximately 1:30 PM.

16. Therefore, while I may already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

17. The Devices are currently in storage at 2915 Rocky Mountain Avenue, Suite 210, Loveland, Colorado.  In my training and experience, I know that the Devices all have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## EVIDENCE

18. I know from training and experience that digital evidence is not limited to computers. I have been involved in cases where persons with an interest in material depicting the sexual exploitation of children can access the Internet, display images of child pornography, and communicate with other individuals with the same interest using digital storage devices to include cellular telephones, e-mail devices, gaming consoles and personal digital assistants. These devices are frequently found to contain chat communications in the form of short message service (SMS) messages as well as enabling Internet and digital cellular network access.

19. I know from training and experience that persons trading in, receiving, transporting, distributing, or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual exploitation of children often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a person's interest in child pornography or child sexual exploitation.

20. I know from training and experience that the complete contents of a cellular telephone may be important to establishing the actual user who has dominion and control of a telephone at a given time.  These devices may also be used by multiple people.  Therefore, the content of a given device, including the applications used to send messages to a given account often provides important evidence regarding the actual user's dominion and control of a device.

21. I know from training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon

and parentheses ":)" to convey a smile or agreement) to discuss matters.  Keyword searches would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement familiar with the identified criminal activity is necessary to find all relevant evidence within the account.

22. Based upon training and experience, I know that persons engaged in online activities involving a sexual interest in children or child erotica are also often involved in online activities involving the production and possession of child pornography.  Likewise, I know from training and experience that persons involved in online activities involving the production and possession of child pornography are often involved in online activities involving the production and possession of child erotica.

23. Based on my training, knowledge, experience, and conversations with others in law enforcement, I understand that an individual who possesses images and/or videos depicting child pornography on one digital storage devices and/or online storage account is likely to possess child pornography on additional digital storage devices and/or Internet email or online storage accounts that s/he possesses.  Additionally, based on this training and experience, I understand that an individual who discusses the sexual abuse and/or exploitation of children on one digital storage device is likely to conduct those communications on additional digital storage devices that s/he possesses.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my training and experience, I know about the following items, hereinafter and below and in the Attachments "Devices."

25. A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable digital storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media includes various types of flash memory cards and miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos such as texts, word processing documents, or web pages.  If the camera is equipped with global positioning system ("GPS") technology, that information may be recorded as metadata associated with the photographs and videos taken with that camera as well as other information such as the make and model of the camera and the date and time the image was created.  Some cameras and removable storage media are now equipped with wireless capabilities, which allow for images and files to be uploaded from the camera or digital storage media directly to the Internet or to other digital storage devices or computers using a wired or wireless connection.

26. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send

signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet including websites, social media sites, bulletin boards, file sharing, and other Internet sites. Wireless telephones often have a subscriber identity module or subscriber identification module ("SIM"), which is an integrated circuit that securely stores the International Mobile Subscriber Identity ("IMSI") and the related key used to identify and authenticate subscribers on mobile telephone devices. A SIM is embedded into a removable "SIM card," which can be transferred between different mobile devices. A SIM card contains a unique serial number ("ICCID"), IMSI, security authentication and ciphering information, temporary information related to the local network, a list of the services to which the user has access, and certain passwords. Most SIM cards will also store certain usage data, such as call history, text ("SMS") messages, and phone book contacts. Wireless telephones may also be "smartphones," such that they operate as personal computers capable of accessing the Internet. They may also include GPS technology for determining the location of the device. Such telephones may also contain removable storage media, such as a flash card—such devices can store any digital data, and can have the capacity to store many gigabytes of data. Some cellular telephones also have software, giving them the same capabilities as personal computers including accessing and editing word processing documents, spreadsheets, and presentations. Some cellular telephones also operate as a "tablet," or mobile computer, and can contain software programs called applications. Those programs can perform different functions and save data associated with those functions, including use associated with the Internet.

27. A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

28. A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi"

networks, or otherwise.  Tablets typically contain programs called applications ("apps"), which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

29. A hard disk drive ("HDD"), also known as a hard drive or hard disk, is a data storage device that consists of an external circuit board, external data, power connections, and internal glass, ceramic, or magnetically charged rotating metal platters that permanently store data even when powered off.  A solid-state drive ("SSD"), also known as a solid-state disk, is a data storage device that uses integrated circuit assemblies as memory to permanently store data instead of using rotating platters.  Flash drives, flash cards, and thumb drives are digital storage devices that can connect to computers or other devices using the appropriate connection.  CDs/DVDs are digital storage devices capable of storing large amounts of digital data—a user can store information onto a CD/DVD by "burning" digital data to the device using a computer CD/DVD drive.  These devices are capable of storing any electronic information including images, videos, word processing documents, programs and software, and web pages.

30. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

31. Computer routers and modems are also used as instrumentalities of crimes involving computers both to operate the computer to commit criminal offenses involving the sexual exploitation of minors.  Modems and routers can contain information about dates, IP addresses, MAC addresses, frequency, and computer(s) used to access the Internet, and some have separate digital storage capacity that allow them to connect to other devices and to store information similar to an external digital storage device like a flash card or thumb drive.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device or the computers and devices connected to it.

32. "Computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and can include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

33. Based on my knowledge, training, and experience, I know that computers and digital storage devices can store information for long periods of time. Similarly, things that have been searched for and viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensic tools.

34. Based on my knowledge, training, and experience, examining data stored on computers and digital storage devices can uncover, among other things, evidence that reveals or suggests who possessed or used the computer or digital storage devices.

35. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

    A. Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital storage device or computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    B. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    C. Wholly apart from user-generated files, computer storage media including digital storage devices and computers' internal hard drives can contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    D. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Forensic review may also disclose when and by whom the Internet was used to conduct searches, view material, and communicate with others via the Internet.

36. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information on the Devices that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of the use, who used the Devices, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

A.  Data on the storage medium can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer or device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.  This information can be recovered months or even years after they have been downloaded onto the storage medium, deleted, or viewed.

B.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

C.  A person with appropriate familiarity with how a digital storage device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

D.  The process of identifying the exact electronically stored information on storage media that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer or digital storage device and the application of knowledge about how a computer or digital storage device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

E.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

F.  I know that when an individual uses an electronic device to aid in the commission of a crime, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage

medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain items to include, but are not limited to, internet search terms indicative of a user's intent to access child pornography, indications of downloading child pornography, the movement of images and videos depicting child pornography from one storage medium to another and electronic communications between individuals sharing an interest in the sexual exploitation of children.

G. I also know that those who engage in criminal activity will attempt to conceal evidence of the activity by hiding files, by renaming the format, (such as saving a .pdf image file as a .doc document file) or by giving them deceptive names such that it is necessary to view the contents of each file to determine what it contains.

H. A single compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Thumb drives with a capacity of 32 gigabytes are not uncommon. Flash cards with a capacity of 32 gigabytes are not uncommon. Hard drives with the capacity of 500 gigabytes up to 3 terabytes are not uncommon. These drives can store thousands of images and videos at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with video capture capabilities, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

37. *Need to review evidence over time and to maintain entirety of evidence.* I recognize the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. I advise it would be impractical and infeasible for the Government to review the mirrored images of digital devices that are copied as a result of a search warrant issued pursuant to this Application during a single analysis. I have learned through practical experience that various pieces of evidence retrieved from digital devices in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops. In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of

any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original.  In the past, I have reviewed activity and data on digital devices pursuant to search warrants in the course of ongoing criminal investigations.  I have learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation.  As such, I respectfully request the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time.  As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

38. *Nature of examination*.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, copying and reviewing the contents of the Devices consistent with the warrant.  The warrant I am applying for would authorize a later examination and perhaps repeated review of the Devices or information from a copy of the Devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

### INVESTIGATION

1. On November 27, 2017 at approximately 6:12 PM, FLPD Officers Joshua Goddard and Bryan Whyard were acting in their official, on-duty capacities as law enforcement officers when they contacted a gray, 1999 Ford F-250 pickup truck bearing Colorado license plate 154-YPH driven by Frank Wietecha. The vehicle was not properly displaying a front license plate, and the stop occurred in a Philips 66 gas station parking lot located at the intersection of 1st Street and Denver Avenue in Fort Lupton, Colorado. Two additional passengers in the vehicle were identified as Wietecha's daughter, Minor #1[1], and Minor #1's husband, David Tuttle.

---

[1] Minor #1's true identity is known to the FBI, but it is withheld from this affidavit as she is still a juvenile.

2.  Wietecha was taken into custody by FLPD based on his driving status and his failure to provide valid proof of insurance.

3.  During a search incident to arrest, Officer Goddard located 12 MicroSD cards from Wietecha's front right pocket and Wietecha's cellular telephone. Minor #1 requested to hold onto Wietecha's cellular telephone while he was in custody as she needed a phone. Wietecha advised that Minor #1 could have and use his cell phone while he was in jail, and Minor #1 indicated that she knew Wietecha's swipe code to unlock the device. Minor #1 then left on foot with Tuttle, and Wietecha was transported to the Weld County Jail.

4.  At approximately 7:47 PM, Officer Goddard received a call from the Weld County Communications Center. Minor #1 and Tuttle had accessed Wietecha's cell phone, and they had located numerous images of child pornography.

5.  Officers Goddard and Whyard met Tuttle and Minor #1 at the Philips 66 gas station. Minor #1 explained that she had been given permission by Wietecha to access his phone as she had in the past. She had accessed Wietecha's photo gallery where she located nude photographs of herself and other juveniles. Minor #1 accessed the telephone and asked Officers Goddard and Whyard to observe the content contained in the photo gallery.

6.  Officers Goddard and Whyard observed what they described to be hundreds of images, many of which were sexually explicit images involving minors to include several photographs depicting nude prepubescent males and females, some of whom appeared to be as young as five years of age. According to the officers, approximately 800 images were located on the device, several of which depicted oral, vaginal and anal penetration.

7.  The officers located a gallery named "spy shit" which appeared to be images of females and young girls photographed inside an unknown Walmart location. There were also a number of images of young girls jumping on a trampoline in a backyard of a residence. The photographs featured the females in different outfits suggesting that the photographs had been taken over a range of multiple days.

8.  On November 29, 2017 at approximately 12:30 PM, I received a call from Douglas Perry, FLPD, requesting my assistance with this investigation as it appeared at the time that Wietecha had potential property in multiple counties throughout Colorado, and he had ties to additional states.

9.  Based on the information above, the Honorable United States Magistrate Judge Nina Wang, United States District Court for the District of Colorado, authorized a search warrant for the cellular telephone and 12 MicroSD cards seized from Wietecha's person during his arrest.

10. On the night of November 29, 2017 into November 30, 2017, I assisted FLPD with a search warrant execution on a trailer appearing to be the primary residence of Wietecha. The search warrant was issued by the Eight Judicial District of Colorado, and it was based primarily on FLPD's review of Wietecha's cellular telephone and statements made by Wietecha's family

members. A number of electronic devices and items were seized pursuant to this search warrant, and these additional items, the Devices, are currently in my possession.

11. While searching Wietecha's camper we noted several items leading us to believe that Wietecha was in possession of a number of stolen items. We located and seized expired credit cards not belonging to Wietecha, an Illinois Driver's license issued to Nicki Stieren, paperwork with the name Alisha Gonzalez and several articles that appeared to be children's toys. Wietecha has biological children, but he is not known to reside with any of them. Based on the allegations that Wietecha may be producing child pornography, I made the determination to seize the children's articles. The remaining articles described above appeared to be stolen property and were also seized.

12. During FLPD's review of Wietecha's cellular telephone, they noted several videos of Wietecha following people throughout stores. During our search we located a number of web cameras, peep-type cameras and remote control drones with cameras. Some of the peep-type cameras were connected to several feet of cable. We also located a hand-drawn wiring schematic, several loose circuit boards and cable, plus a breast pump with internal circuit boards. Based on his physical proximity to young children and knowledge that Wietecha had a propensity to video individuals in candid moments, we also seized these items.

13. During my subsequent review of Wietecha's cellular telephone and MicroSD cards, I noted several examples of child pornography including:

    A. An image located on a Muve Music Micro SD card: the image has a file name IMG_20130914_082955 that appears to be a photograph taken by a separate device (such as a cell phone) of a computer screen with an open web browser. A separate tab is open titled "Denver Wanted Classifieds." Since nine laptop computers were seized from Wietecha's trailer, I cannot identify the photographed device based on the photograph alone. The image appears to be of a prepubescent female's torso and genitals. The female has a yellow duck and blue water painted on her torso. There are two additional photos, each one zooming on the female's genitals.

    B. In a folder titled "Downloads" on Wietecha's cellular telephone, there are approximately 3,344 images, which depict child erotica including several images of child pornography such as the following examples:

        i. A file titled imgsrc.ru_57127902KwD depicts a nude, prepubescent female's torso and genitals. She is laying on her back on a flower pattern bedspread with her legs spread. Text on the photo states, "anice.pw/cuty."

ii. A file titled imgsrc.ru_57061964CdW depicts a montage of 36 photos of the same female, approximately age 7, dressed in an orange shirt. 12 photographs depict the female performing oral sex on a male, and the remaining photographs depict the female's face near the male's penis. Text on the photo states, "nmeday.com, thousands nude preteen's movies and images."

C. In a folder titled "Download2" on Wietecha's cellular telephone, there are approximately 7,060 images, most of which depict child erotica with several images of child pornography including the following example:

i. A file titled imgsrc.ru_55513097kLg depicts a montage of 15 photos of the same nude, prepubescent female, approximately age 8 – 9. The images depict a range of sex acts to include intercourse with an adult male and the female masturbating with an off-white phallic object.

14. I also noted the following images and videos, that while not illegal, are concerning as they depict potentially predatory behavior:

A. A photograph on the cellular telephone titled SpyPhoto_20171127_143603170 depicts an adult male, face not visible, pushing a shopping cart in a store parking lot. A male and female, appearing to be approximately ages 1-2 and 4, respectively, are being pushed in the cart.

B. A photograph located on a Muve Music Micro SD card titled 2013-09-04 15.27.58.jpg depicts three potentially middle-school aged females crossing a road near a crossing guard. The photograph appears to have been taken from a moving vehicle out the driver's side window.

C. A photograph located on a Muve Music Micro SD card titled IMG_20130817_161326.jpg depicts several children in bathing suits playing in a splash pad at a town square.

D. A video located on a SanDisk 8GB Micro SD card, approximately one hour and 14 minutes in length, appears to be a video created by Wietecha. The camera is physically moved and repositioned throughout, and at approximately 44 minutes, the camera is positioned next to a tree with a view of several vehicles and folding chairs. At 1 hour and one minute, along with several other times, a female, approximately age 4, wearing a pink shirt and shorts is seen running around and playing while a family moves about the camp sight.

15. In several videos and images, Wietecha shows his face, to include an image on a Muve Music SD card titled IMG_11370_15716.png, further demonstrating that Wietecha took the photographs and videos he had not downloaded.

16. I also noted examples of Wietecha taking photos of the actual camera devices displaying photographs he had taken on that device to include the following examples from a Muve Music MicroSD card:

    A. IMG_20130808_165703.jpg depicts a close up of a video on a MinoHD camera. The display on the MinoHD camera depicts the posterior of a female wearing bright pink shorts, unknown age that appears to have been taken in a store. Three MinoHD devices were seized from Wietecha's trailer.

    B. IMG_20130812_025237.jpg depicts a photograph on a Panasonic camera device taken up skirt of a seated female, age unknown. The female's genitals are exposed and visible.

17. The Devices are currently in storage at 2915 Rocky Mountain Avenue, Suite 210, Loveland, Colorado pending review and transfer to the FBI's Denver Field Office. In my training and experience, I know that the Devices all have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of FLPD and the FBI.

## **CONCLUSION**

18. Based on the investigation described above, probable cause exists to believe that inside the Devices (described on Attachment A), will be found evidence, fruits, and instrumentalities of a violation of Title 18, United States Code, Sections 2251, 2252, and 2252A (described on Attachment B).

19. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.


_____*s/Philip R Jones*_____
Philip R. Jones
Special Agent, FBI


SUBSCRIBED and SWORN before me this __20th__ day of ___December_____ 2017

UNITED STATES MAGISTRATE JUDGE


Application for search warrant was reviewed and is submitted by Valeria Spencer, Assistant United States Attorney.

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

1. I am requesting seizure and examination of the following items, known as evidence items 1B1, 4, 6, 10-19, 21, 23-43, 45-50, 52, 53, 55, and 60-88, further described as follows, (hereinafter and in Attachment B the "Devices") currently held at the FBI's Fort Collins office, 2915 Rocky Mountain Avenue, Suite 210, Loveland, Colorado:

- Verizon Jet Pack with passwords
- Neuros HD
- Micro DVDs with the following titles:
    - Annalise 4-29
    - Annalise Shows up with sisters 4-20-15
    - Annalise sings to me
    - Annalise Tattoo 4-20-15
    - Annalise & Cali Do Nails
- Motorola M Card, S/N MA1321ER2046
- Sandisk 128 GB SD Card, S/N S34611122
- 19 DVDs
- 2 wireless cards
- 2 SIM cards
- Compaq laptop computer, S/N CND83032K3
- Gateway laptop computer, S/N LXWGH02036948BATD42200
- Gateway laptop computer, S/N LXWM8020020191B1F1601
- Dell Inspiron laptop computer, S/N CN-0W92601296158J5819
- Gateway laptop computer, S/N LXWRE02001034197EB1601
- HP Pavilion ze4500 laptop computer, S/NCNF3400192
- HP Pavilion ze4400 laptop computer, S/N CNF33422SM
- HP Pavilion ze4300 laptop computer, S/N CN31556231
- Toshiba Portege 2000 laptop computer, S/N 32063078PU
- SanDisk Cruzer Glide 64GB, BN170225641B
- Alacatel OneTouch Cellular Telephone, S/N B1780002C172TROA
- Mino Flip Video Device (x3)
- Sony Bloggie, 1647237
- Misc Cell Phones (broken and missing parts, approximately four)
- PNY optima SD, 2GB, WF9303F
- Sony 64MB Memory Stick, E42423A
- iPhone A1532
- Sony 128MB Memory Stick, K1097SA
- Samsung Cellular Telephone, S/N SM-S327VL(GP), IMEI 354308081442369

- LG Cellular Telephone LGMS345, S/N 506CYDG003714
- Pantech Cellular Telephone CDM8999VW, S/N 110900269730 (no battery)
- Samsung Cellular Telephone SPH-M830 (no battery)
- Nikon CoolPix 2500, 3310400
- Yellow digital camera, unknown make and model
- Sony Palm Pilot Clie, S/N 3019048
- Notes with IMEI, Router and IP addresses
- Sony Handycam, 321620
- Found me Tag it and track it (x4)
- View Sonic Digital Card Reader, Model NS12289, Barcode R65084102922
- PNY Optima Attache 8GB
- PNY Attache 16GB
- DaneElec Flashdrive
- Pink MP3 Player, 256MB, unknown make
- Welldone company, Credit card shape flash drive, FHD01-03
- Black flash drive, unknown make
- RCA device, TH1814WM-A
- DaneElec 128MB Flashdrive
- Toshiba Disk Drive, MK3265GSXN, S/N 61ISC063T
- Toshiba Disk Drive, MK3255GSXF, S/N 90EXT3ZAT
- Samsung Disk Drive, MP0402H, S/N S03WJ20L344172
- Hitachi Disk Drive, HTS543232L9A300, S/N 090203FB0400LEK3VW9A
- Western Digital Disk Drive, WD1600BEVE-00A0HT0, S/N WX91C5228404
- Toshiba Disk Drive, HDD2146, S/N 90R13076T
- Fujitsu Disk Drive, MHW212013J, S/N K321T82276LP
- Seagate, ST9100822A, S/N 3LG1LWZL
- iPhone A1303
- iPhone 5, identifiers covered
- iPhone A1387
- Samsung Cellular telephone, IMEI 358917054572170
- Samsung Cellular Telephone, GT-19500, IMEI 357138054542599
- Cricket Nokia, cracked screen with blue back cover, IMEI 356454060848214
- LG Cellular Telephone with cracked screen, IMEI 354887071283800
- Intel Nextbook, S/N YFG0914040003
- Asus Nexus Tablet, S/N C60KBC097026
- Samsung SD adaptor with MicroSD card, unknown make and size
- Amazon Kindle, model X43Z60, with hand written note "brittanyhajek@yahoo.com
- 16 spy-type cameras
- 3 drones

2

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

For the Devices listed and described in Attachment A, the following items, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A:

1. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A:

2. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Devices or by other means for the purpose of committing violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

3. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

4. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

5. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A or that show who used, owned, possessed, or controlled the Devices.

6. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Devices, or that aid in the identification of persons involved in violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

7. Credit card information, bills, and payment records pertaining to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

8. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.

9. Evidence of who used, owned, or controlled the Devices to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were

created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

10. Evidence of software that may allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

11. Evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence.

12. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Devices.

13. Evidence of how and when the Devices were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

14. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Devices.

15. Passwords, encryption keys, and other access devices that may be necessary to access the Devices.

16. Contextual information necessary to understand the evidence described in this attachment.

DEFINITIONS:

17. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).